M. ELIZABETH DAY (SBN 177125)
eday@feinday.com
DAVID ALBERTI (SBN 220265)
dalberti@feinday.com
SAL LIM (SBN 211836)
slim@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
HONG LIN (SBN 249898)
hlin@feinday.com
JEREMIAH ARMSTRONG (SBN 253705)
jarmstrong@feinday.com
**FEINBERG DAY ALBERTI LIM & BELLOLI LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel:  650.618.4360
Fax:  650.618.4368
Attorneys for Uniloc 2017 LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNILOC 2017 LLC<br><br>Plaintiff,<br>v.<br>MICROSOFT CORPORATION,<br><br>Defendant. | CASE NO. 8:19-cv-00477<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Uniloc 2017 LLC ("Uniloc"), by and through the undersigned counsel, hereby brings this action and makes the following allegations of patent infringement relating to U.S. Patent No. 7,092,953 against Defendant Microsoft Corporation ("Microsoft"), and allege as follows upon actual knowledge with respect to itself and its own acts and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This is an action for patent infringement. Uniloc alleges that Microsoft infringes U.S. Patent No. 7,092,953 (the "'953 patent) a copy of which is attached hereto as Exhibit A.

2. Uniloc alleges that Microsoft directly and indirectly infringes the '953 patent by making, using, offering for sale, selling and importing intellectual property database navigation products, such as Microsoft PlayReady. Uniloc further alleges that Microsoft induces and contributes to the infringement of others. Uniloc seeks damages and other relief for Microsoft's infringement of the Asserted Patents.

## THE PARTIES

3. Uniloc 2017 LLC is a Delaware corporation having places of business at 1209 Orange Street, Wilmington, Delaware 19801 and 620 Center Drive, Newport Beach, California 92660.

4. Uniloc holds all substantial rights, title and interest in and to the '953 patent.

5. Upon information and belief, Defendant Microsoft Corporation is a corporation organized and existing under the laws of the State of Washington, with at least the following places of business in this District: 3 Park Plaza, Suite 1600, Irvine, CA 92614; 3333 Bristol Street, Suite 1249, Costa Mesa, CA 92626; 578 The Shops at Mission Viejo, Mission Viejo, CA 92691; 331 Los Cerritos Center, Cerritos, CA

90703; 13031 West Jefferson Blvd., Suite 200, Los Angeles, CA 90094; 2140 Glendale Galleria, JCPenney Court, Glendale, CA 91210; 10250 Santa Monica Blvd., Space #1045, Los Angeles, CA 90067; 6600 Topanga Canyon Blvd, Canoga Park, CA 91303.  Microsoft can be served with process by serving its registered agent for service of process in California: Corporation Service Company which Will Do Business in California as CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Ste. 150, Sacramento, CA 95833.

## JURISDICTION AND VENUE

6.     This action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. § 1 et. seq.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338.

7.     This Court has both general and specific jurisdiction over Microsoft because Microsoft has committed acts within the Central District of California giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Microsoft would not offend traditional notions of fair play and substantial justice.  Defendant Microsoft, directly and through subsidiaries, intermediaries (including distributors, retailers, franchisees and others), has committed and continues to commit acts of patent infringement in this District, by, among other things, making, using, testing, selling, licensing, importing and/or offering for sale/license products and services that infringe the '953 patent.

8.     Venue is proper in this district and division under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) because Microsoft has committed acts of infringement in the Central District of California and has multiple regular and established places of business in the Central District of California.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,092,953

9.     The allegations of paragraphs 1-8 of this Complaint are incorporated

1  by reference as though fully set forth herein.

2      10.    The '953 patent, titled "Apparatus And Method For Intellectual Property Database Navigation," issued on August 15, 2006.  A copy of the '953 patent is attached as Exhibit A.

    11.    Pursuant to 35 U.S.C. § 282, the '953 patent is presumed valid.

    12.    On information and belief, Microsoft makes, uses, offers for sale, and sells in the United States and imports into the United States intellectual property database navigation products such as Microsoft PlayReady (collectively the "Accused Infringing Devices").

    13.    Upon information and belief, the Accused Infringing Devices infringe at least claim 1 in the exemplary manner described below:

    14.    The Accused Infringing Devices practice a method of locating rights associated with a media property.  The Accused Infringing Devices include widely deployed media content protection technology from Microsoft that includes DRM technology for media (content) protection. The Accused Infringing Devices include PlayReady License Servers, including the Microsoft Azure PlayReady Server. These servers associate content rights and policies with media properties when generating licenses.

> **Microsoft PlayReady is the Widest Deployed Content Protection Technology in the World**
>
> Microsoft PlayReady content protection is proven, versatile and scalable. The development of Microsoft PlayReady DRM technology is the culmination of over 14 years of research and development, significant patent portfolio with more than $2B invested in content protection technology. Microsoft provides valuable and reliable IP protection to over a thousand licensees from all parts of the ecosystem to deliver millions of secured, premium content and assets.

**Source:** https://www.microsoft.com/playready/overview/ ,Page 1, last accessed Jan 29, 2019

| PlayReady License Server – Scalable Leaf License Service | Builds and sends scalable leaf licenses to the encryptor/packager for each stream that will be delivered by a set of channels during a specified time period. In most deployments, the scalable leaf license service determines what needs to be delivered in each license by using business logic that a provider implements in the service and data that the service receives from the scheduler and key management server. |
|---|---|

**Source:** https://docs.microsoft.com/en-us/playready/overview/glossary-and-abbreviations

### PlayReady Server on Azure
01/31/2018 • 2 minutes to read • Contributors

**In this article**
PlayReady License Server in Azure Media Services
PlayReady Servers in Azure App Services
PlayReady Servers in Virtual Machines

### PlayReady License Server in Azure Media Services

**Source**: https://docs.microsoft.com/en-us/playready/overview/server-on-azure

15. The Accused Infringing Devices define licenses that include rights characteristics (e.g., policies) such as a begin data Policy, which point to a date at which a client can start decrypting content. Other examples of rights characteristics are a begin time or an end time for content access, or an expiration after first play that indicates the period after first playing the content that access is allowed under the current license. The Accused Infringing Devices support "dozens if not hundreds of different policies."

**Begin Date Policy**

Another common restriction is the begin date policy. If it is present, the client must not bind this license and begin decrypting content until the current date time is after that value.

4

> **Expiration After First Play Policy**
>
> Besides scenarios in which content can be played back depending on a begin time and end time, there is also the model that specifies how long content can be played back after the content is first played. The expiration after first play policy, if present, indicates that the client must stop binding this license and decrypting content if the current number of seconds after the content was first played matches the value in this policy.

> **Other Policies**
>
> PlayReady supports dozens if not hundreds of different policies beyond the ones described on this page. Please read the Compliance Rules for PlayReady Products for the complete definition of the supported policies.

**Source:** https://docs.microsoft.com/en-us/playready/overview/license-and-policies

16. The Accused Infringing Devices define a first media rights hierarchy data structure as shown, for example, by the regional hierarchy and channel hierarchy examples below, showing a hierarchy of a set of nodes. Rights characteristics are carried in policies with their associated rights characteristics values (e.g., expiry after first play).

> In this scenario, the provider defined regions as a hierarchy of large geographical areas, time zones, states, and cities. The provider implemented the hierarchy when defining the master key set and scalable chained licenses for its subscriber base and content. In the context of master key sets and scalable chained licenses, the resulting hierarchy (*binary tree*) served as a key derivation scheme that was used to define content keys that were associated with each other through scalable root and leaf licenses.

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 16, last accessed Jan 28, 2019



Figure 3 – Region-Based Key Derivation Scheme for Scalable Chained Licenses

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 16, last accessed Jan 28, 2019

Figure 6 – Channel-Based Key Derivation Scheme for Scalable Chained Licenses

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 18, last accessed Jan 28, 2019

> Live TV policies are frequently dictated by region-based factors, including but not limited to the geographical area where content is consumed. To address this challenge, PlayReady allows providers to create custom definitions of regions and related policies. For example, a provider might define a region as a geographical area or a specific group of users. To implement their concept of "region" and specify region-based policies, providers can use scalable chained licenses and define a full range of policies.

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 5, last accessed Jan 28, 2019

17. The Accused Infringing Devices identify media rights ancestors (e.g., roots) and decedents (e.g., leafs) using the connected elements (e.g., nodes) that

define the root and leaf node hierarchy of a scalable license chain. These relationships are illustrated in the two example figures below.

| License chain | A license for digital media content that is composed of connected elements that include a root license and one or more leaf licenses, each of which contains a subset of rights for the content. |
|---|---|

**Source:** https://docs.microsoft.com/en-us/playready/overview/glossary-and-abbreviations



Figure 3 – Region-Based Key Derivation Scheme for Scalable Chained Licenses

**Source:** ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 16, last accessed Jan 28, 2019



Figure 6 – Channel-Based Key Derivation Scheme for Scalable Chained Licenses

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 19, last accessed Jan 28, 2019

18. All elements in a license chain are linked to form a media rights hierarchy, including parent and leaf licenses in the chain. Each license (e.g., node) is identified by a key identifier or KID. Leaf licenses include an uplink identifier, which is the key identifier of the root license.

> Works with the scalable leaf license service to obtain a content key and leaf license for each stream that will be delivered by a set of channels during a specified time period. Each license minimally contains the key identifier (KID), content key, uplink root key identifier, and any policies for a stream. The packager also communicates with the advertising system to retrieve and add any advertising metadata to each stream.

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 13, last accessed Jan 28, 2019

> To link elements in a license chain, each leaf license contains an *uplink identifier*. The value of the uplink identifier is the key identifier of the next parent license in the chain, a root license.

**Source:** ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 9, last accessed Jan 28, 2019

19. The Accused Infringing Devices identify a first set of rights (e.g., PlayReady policies) for content (e.g., a media property) using PlayReady policies. These policies can be associated with a root, with those policies applying to all content protected by the leaves. The set of roots and leaves in a scalable license chain corresponds to at least a portion of a set of nodes.

> A PlayReady policy describes the actions permitted and/or required with respect to PlayReady content and restrictions on those actions as described in the PlayReady license associated with the PlayReady content. PlayReady policies are defined in the PlayReady Compliance Rules (CR). The service provider must incorporate the mandatory policies and choose which of the optional policies to use, and have these policies integrated into the license handler on the PlayReady License Server. These policies can be rights, such as the Play right, or restrictions, such as the Minimum Security Level, Output Protection Level, expiration after first play, and so on.

**Source:** https://docs.microsoft.com/en-us/playready/overview/license-and-policies

> Root license – Contains a *root key* that is used to encrypt *leaf keys* in all the leaf licenses that are associated with it. Clients use a root key to decrypt associated leaf licenses and play media streams that are protected by those leaf licenses. A root license also stores policies that apply to all content protected by those leaf licenses.

**Source:** ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 8, last accessed Jan 28, 2019



Figure 3 – Region-Based Key Derivation Scheme for Scalable Chained Licenses

**Source:** ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 16, last accessed Jan 28, 2019

20. The Accused Infringing Devices retrieve from a computer readable memory (e.g., computer storage associated with the PlayRead servers) rights related information (e.g., license information) using a joining of the first set of rights and the first media rights hierarchy data structure represented by the associated scalable license chain structure, such as a hierarchy by region or channel. This is required to build and issue licenses, including managing rights such as usage rules and policies.

> Of the server technologies, PlayReady license services are integral to content protection. They handle critical tasks such as receiving and responding to authentication and license requests from PlayReady clients, building and issuing licenses to valid clients, managing usage rules and policies that are applied to licenses, and implementing business logic for authorization and control of usage rights.

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 7, last

accessed Jan 28, 2019



Figure 3 – Region-Based Key Derivation Scheme for Scalable Chained Licenses

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 16, last accessed Jan 28, 2019



Figure 6 – Channel-Based Key Derivation Scheme for Scalable Chained Licenses

**Source**: ProtectingLiveTVServicesWithPlayReady_March2015.pdf, Page 19, last accessed Jan 28, 2019

21. Microsoft has infringed, and continues to infringe, at least claim 1 of the '953 patent in the United States, by making, using, offering for sale, selling and/or importing the Accused Infringing Devices in violation of 35 U.S.C. § 271(a).

22. Microsoft also has infringed, and continues to infringe, at least claim 1 of the '953 patent by actively inducing others to use, offer for sale, and sell the Accused Infringing Devices. Microsoft's users, customers, agents or other third parties who use those devices in accordance with Microsoft's instructions infringe claim 1 of the '953 patent in violation of 35 U.S.C. § 271(a). Microsoft

intentionally instructs its customers to infringe through training videos, demonstrations, brochures and user guides, such as those located at: www.microsoft.com; https://support.microsoft.com, download.microsoft.com/…/ProtectingTVServicesWithPlayReady_March2015.pdf, https://docs.microsoft.com/en-us/playready/, including subdomains. Microsoft is thereby liable for infringement of the '953 patent under 35 U.S.C. § 271(b).

23. Microsoft also has infringed, and continues to infringe, at least claim 1 of the '953 patent by offering to commercially distribute, commercially distributing, and/or importing the Accused Infringing Devices which devices are used in practicing the processes, or using the systems, of the '953 patent, and constitute a material part of the invention. Microsoft knows portions of the Accused Infringing Devices to be especially made or especially adapted for use in infringement of the '953 patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Microsoft is thereby liable for infringement of the '953 Patent under 35 U.S.C. § 271(c).

24. Microsoft has been on notice of the '953 patent since March 12, 2019 and at the latest, the service of this complaint upon it. By the time of trial, Microsoft will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of at least claim 1 of the '953 patent.

25. Upon information and belief, Microsoft may have infringed and continues to infringe the '953 patent through other software and devices utilizing the same or reasonably similar functionality, including other versions of the Accused Infringing Devices.

26. Microsoft's acts of direct and indirect infringement have caused and continue to cause damage to Uniloc and Uniloc is entitled to recover damages sustained as a result of Microsoft's wrongful acts in an amount subject to proof at

trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Uniloc 2017 LLC respectfully prays that the Court enter judgment in its favor and against Microsoft as follows:

    a.    A judgment that Microsoft has infringed one or more claims of the '953 Patent literally and/or under the doctrine of equivalents directly and/or indirectly by inducing infringement and/or by contributory infringement;

    b.    That this Court award Uniloc its damages pursuant to 35 U.S.C. § 284 and any royalties determined to be appropriate;

    c.    That this be determined to be an exceptional case under 35 U.S.C. § 285 and that Uniloc be awarded enhanced damages up to treble damages for willful infringement as provided by 35 U.S.C. § 284;

    d.    That this Court award Uniloc prejudgment and post-judgment interest on its damages;

    e.    That Uniloc be granted its reasonable attorneys' fees in this action;

    f.    That this Court award Uniloc its costs; and

    g.    That this Court award Uniloc such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Uniloc hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

| | | |
|---|---|---|
| 1 | Dated: March 12, 2019 | FEINBERG DAY ALBERTI LIM & BELLOLI LLP |
| 2 | | |
| 3 | | By: */s/ M. Elizabeth Day* |
| | |     M. Elizabeth Day |
| 4 | | |
| 5 | | Attorneys for Plaintiff |
| | | Uniloc 2017 LLC |